UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-10065 |
| ) | |
| EDWARD JORDAN, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Edward Jordan's Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). (D. 55). For the reasons set forth below, his Motion is DENIED.

### BACKGROUND

On February 22, 2008, this Court sentenced Defendant to 48 months in prison and six years of supervised release for the offense of possession of cocaine base (crack) in violation of 21 U.S.C. § 841(b)(1)(C). (D. 27). He began serving his term of supervised release on November 5, 2010. (D. 40).

On December 12, 2013, a petition to revoke Defendant's supervised release was filed after he was arrested in McLean County for delivery of a controlled substance (cocaine) within 1000 feet of church, possession of a controlled substance, and aggravated fleeing and eluding in McLean County case number 13-CF-1010. (D. 40). As a result, the Court revoked his supervised release and ordered him to serve 12 months and one day in prison, consecutively to the state offense. (D. 55 at 2). He was returned to the Illinois Department of Corrections (IDOC) where he served the remainder of his state sentence. *Id*. He was paroled on September 21, 2020 and is currently at the

Macon County Jail awaiting delivery to the Bureau of Prisons (BOP) to serve his federal sentence. *Id.* His scheduled release date from the BOP is July 29, 2021. (D. 53 at 1).

On October 13, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (D. 52). The Court appointed the Federal Public Defender (FPD) to represent him. On October 28, 2020, the FPD filed an Amended Motion for Compassionate Release on Defendant's behalf. (D. 55). On November 10, 2020, the Government filed its Response in Opposition to Defendant's Motion for Compassionate Release. (D. 57). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, ---F.3d----, 2020 WL 6813995, at *1 (7th Cir. Nov. 20, 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion

provided that the prisoner first allowed the BOP to review the request and make a recommendation or 30 days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 2. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines analysis provides a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1 (A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

**DISCUSSION**

I.   **Exhaustion of Administrative Remedies**

An inmate may file a motion for compassionate release after requesting the warden of his facility to bring such a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). If 30 days pass without a response, the inmate can file a motion in court. *Id*. Since COVID-19 has wreaked havoc on this

country, many federal judges, including those in the Central District of Illinois, have considered whether to waive the exhaustion requirement. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19. *See e.g. United States v. Anderson,* 2020 WL 2521513 (C.D. Ill. May 18, 2020).

Defendant admits that he has not exhausted his administrative remedies, but he argues that it is impossible for him to do so because he is still at the Macon County Jail awaiting transfer to a BOP facility. (D. 55 at 3-4). This Court must determine whether to exercise its discretion and waive the exhaustion requirement. In *United States v. Smith*, a district court granted a motion for compassionate release before the defendant was taken into BOP custody. *United States v. Smith*, No. 09-CR-20014 (C.D. Ill. May 28, 2020). In *Smith*, the Court stated:

> [R]equiring Defendant to wait until his arrival at a BOP facility in order to submit a request for compassionate release would, at best, result in delay and possible exposure to COVID-19 while his request is processed. At worst, Defendant would be transferred to another facility within the 30-day review period, creating a real possibility that any administrative remedy would be effectively unavailable to him until it is too late.

*Id*. at 4. *See also United States v. Schneider*, 2020 WL 2556354 (C.D. Ill. May 20, 2020).

Under the circumstances in Defendant's case, the Court finds that the 30-day requirement under § 3582(c)(1)(A) can be waived due to the current COVID-19 pandemic. Defendant is unable to exhaust his administrative remedies until after he is transferred to a BOP facility where he could make a request to the warden. As Defendant states, "there is no telling whether he will be transferred to the BOP before his relatively short federal prison sentence will be discharged while he is in a county jail." (D. 55 at 3).

## II. Eligibility for Compassionate Release

Defendant argues the COVID-19 pandemic can constitute an extraordinary and compelling reason for release if: (1) the defendant's institution is facing a serious outbreak and is unable to

successfully contain it, and (2) the defendant's health condition places him at a significant risk for complications from the virus. (D. 55 at 4) (citing *United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020)).

### A. Defendant's Health

Based on his IDOC public record, Defendant is considered obese with a BMI of 32 at 6 feet tall and 240 pounds. (D. 55 at 6). According to the CDC, obesity presents an increased risk for complications from COVID-19. *Id*. Defendant does not have any other risk factors. *Id*. The Government argues that when the Presentence Investigation Report (PSR) was issued in 2008, Defendant reported being 6'2" and weighing 180 pounds, which would result in a BMI of 23.1. (D. 57 at 6-7; PSR ¶ 46). The BOP provided Defendant's medical records to the parties, but they were from 2008-2010 and did not include any information about his height and weight. (D. 53 at 2; D. 57 at 6). The Government acknowledges that the CDC has identified obesity as a medical condition that places an individual at an increased risk of severe illness from COVID-19. (D. 57 at 6-7).

### B. Macon County Jail

The rate of infection at the Macon County Jail is unknown and not included in the parties' pleadings. The Government describes the steps that jail has taken to reduce the spread the COVID-19, including limitations on visits, temperature checks, and increased cleaning. (D. 57 at 7-8). If a positive case is confirmed, the jail has the capacity to isolate the individual until he or she can be relocated to a medical facility. *Id*. at 8. MCJ also has a full-time health care staff and a visiting physician. *Id*. The Court recognizes that an outbreak could still occur despite these safety measures, but the mere existence of the COVID-19 pandemic alone does not provide a basis for a sentence reduction. If it did, every inmate would be released. *See Melgarejo*, 2020 WL 2395982,

at *5. That does not mean the pandemic is irrelevant to the analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition identified by the CDC as increasing the risk for severe illness from the virus, that condition may constitute "extraordinary and compelling reasons" for a reduction. Here, it is unclear whether Defendant has a condition that places him at a higher risk. The Court does not have current medical records from the BOP. The medical records it does have are at least 10 years old and do not include a height and weight. The best information the Court has is the IDOC public record cited in Defendant's Motion. Using the IDOC record, Defendant is considered obese, which places him at an increased risk for severe complications from COVID-19. Therefore, the Court finds that he has established extraordinary and compelling reasons for a reduced sentence. That being said, the Court must also consider whether a reduction is warranted under the factors listed in 18 U.S.C. § 3553(a).

### III.    Consideration of the § 3553(a) Factors

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A), which provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13. The Commission's analysis can guide the Court's discretion, but it is not binding upon the Court. *Gunn*, 2020 WL 6813995, at *2.

Defendant argues that he has spent most of his adult life in prison for non-violent offenses and deserves a chance to prove he can lead a law-abiding life. (D. 55 at 9). He will be on mandatory supervised release for three years (monitored by an IDOC parole officer) and three years of supervised release (monitored by a U.S. Probation officer) if the Court releases him to home

confinement. *Id*. Defendant asserts that these supervisory measures "will go a long way to lessening any danger to the community." *Id*. The Government opposes compassionate release and argues that he presents a very real danger to the community. (D. 57 at 27). Defendant was stopped for a traffic violation on March 21, 2007, and police recovered 2.4 grams of cocaine base from the vehicle. *Id*. at 3. Defendant actively resisted arrest and broke free from the officer, who broke his finger and sprained his knee during the struggle. *Id*.; PSR ¶¶ 10-11. The officer's K-9 took Defendant to the ground, and officers had to tase Defendant to gain compliance. *Id*. After his arrest, an additional 9.9 grams of cocaine base (crack) was found in Defendant's possession. *Id*.

While incarcerated awaiting sentencing on the federal offense, Defendant accumulated a long list of disciplinary infractions. (D. 57 at 4). In August 2007, he was cited for distributing tobacco in jail to other inmates, but he denied it. *Id*. (PSR ¶¶ 5-6). In September 2007, he was charged with intimidation, making a deliberate or implied threat to staff, making obscene remarks, insubordination, violation of safety policy, making a racist remark, and misuse of mail privileges. *Id*. In October 2007, he was charged with creating a disturbance, possession of/or smuggling contraband, and attempting to pass contraband, insubordination, and making a racist remark to staff. *Id*.

Defendant was sentenced and served his time for the federal offense. While on supervised release, he was arrested in McLean County for delivery of a controlled substance (cocaine) within 1000 feet of a church, possession of a controlled substance, and aggravated fleeing and eluding. (D. 57 at 5). The McLean County Circuit Court sentenced Defendant to 13 years in IDOC custody. *Id*. This Court revoked his supervised release and ordered him to serve 12 months and one day in BOP custody, consecutive to his 13-year IDOC sentence. *Id*.

Defendant has a significant criminal history, has been noncompliant while on supervised release, and incurred many disciplinary sanctions while in custody. This leaves the Court unconvinced that Defendant will not be a danger to the community if released. Waiving the remainder of Defendant's sentence would not promote respect for the law, reflect the seriousness of the offense, or provide adequate deterrence. As such, a sentence reduction is not warranted under the § 3553 factors, and his Motion is DENIED.

## CONCLUSION

Defendant's Amended Motion for Compassionate Release [55] is DENIED and his *pro se* Motion for Compassionate Release [52] is MOOT.

ENTERED this 9th day of December, 2020.

s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge